2013-1044 MR. MARSCHRAK Good morning. We respectfully submit to trial court, at your discretion, the conclusion that ITOCHU's failure to file a court-characterized, and I quote, short comment submission, close quote, constituted an appropriate reason to deny ITOCHU's right to obtain judicial review of the merits of its claim. In reviewing the CIT decision, we ask this court to recognize what this case is not about. This is not a case where plaintiff did not raise the issue before the agency. ITOCHU vigorously presented its position to the high-level Department of Commerce officials. MR. MARSCHRAK But that's what the CIT judge said, right? MR. MARSCHRAK Well, the CIT judge said that— MR. MARSCHRAK They waived it. You waived it. MR. MARSCHRAK The CIT judge, Your Honor, said we did not renew our objection. We believe there's a tremendous distinction between making an argument before the agency and renewing our objection. What the CIT judge said we didn't do is file short comment submission preserving the position on the effective date. MR. MARSCHRAK He said you didn't nail it down. MR. MARSCHRAK Yes, Your Honor. We have many, many, many nail jokes. We didn't have to nail it down, Your Honor. And the reason we didn't have to nail it down by filing a very short, you know, one more knock—my nail joke—one more knock on the nail was that we made the presentation orally in writing before senior Department of Commerce officials. The Department considered our determination in the preliminary determination. In fact, the Department considered our submission in the final determination. The problem here or the issue here is whether we have to renew our objection after the preliminary determination. And we believe that the key factor on the issue of law, which the trial judge misconstrued, was the fact that in the preliminary determination when the Department of Commerce invited comments it did not refer to Section 351.309, which talks about filing case briefs. And when you look at the Department of Commerce regulations, 351.309 says you are required to renew your objection to preserve your rights. Section 351.309 does not apply to this particular case. Can I ask you, would at least some of your arguments about the error of holding you to exhaustion apply even if 309 in fact applies? Your Honor, it would be a different case. I'll be very frank with you. If 351.309 applied, it would have been in the notice. I took something like the gist of your argument to be that having told Commerce what your legal position was, there is utterly no point in your having told them again because they were busy litigating a position, not just that they had discretion about the effective date, but that they were legally required to exclude all entries, even unlitigated entries subject to the review. And so, without any discretion, am I understanding? That is absolutely one of our arguments. We are saying it would be absolutely futile for us to raise this issue after the preliminary Department of Commerce was defending this position in the Court of International Trade. We made our pitch to the Department of Commerce. They were defending the position in court. There was nothing more we could say or do. Just so I understand, the position that they were taking, and I think Heva Hill says this and it quotes trustees in bankruptcy, was that they lacked any discretion. They were statutorily forbidden to include entries back to the effective date. That's what they're saying, and the court in Heva Hill has said it was an abuse of discretion for them not to go back and allow unlitigated entries to be subjected to change circumstances. This case was going on. We were going before the Department of Commerce. There was a parallel case in the Court of International Trade where the Commerce Department was taking the position directly contrary to the position we're presenting before Commerce. It's absolutely futile for us to raise anything else with Commerce because they would have said what they would have said in the final. And the whole purpose of renewing objections, again, we made the argument, but what we didn't do was file the one short common submission. We didn't file this one piece of paper. And Judge Stancil, I think he realized it would have been futile for us to file it, but he said, in his opinion, you know, you have to file it to preserve our rights, and we're saying we don't have to file it to preserve our rights because 351.309 only applies in a case of brief determination. When we received that notice, Your Honor, we received a preliminary determination notice. We have to, you know, as lawyers for a client, we have to make a decision. Do we have to file another piece of paper? And your position, I take it, is that, well, had it come in cost-free, it would have been the more conservative and cautious course to go ahead and file the piece of paper, but it didn't come cost-free because you had the extension of the period. That was, yes, Your Honor. I understand that. That's one of our, you know, one of the reasons we didn't do it. Right, I understand that. It was a cost. But let me ask you this. In that regard, is it clear to you that filing a, this is our position and we're sticking to it, we're not asking you to do anything new, to write in a treatise, et cetera, just a one-sentence letter, but we're sticking to it, is it clear to you that that would have been the kind of comment or response that would have triggered the 225 extra days? In our opinion, Your Honor, because we practice before the Department of Commerce every day, yes. The answer is anything you said. If you said something that said we don't like it, that would have been enough. And the judge says we're speculating, but it's a speculation based on a practical experience before the Department of Commerce. When you file comments, they have a tremendous caseload, you know, time. Well, this is what you're speculating about is the amount of time, not the question of whether it would have triggered their entitlement to take the extra time. That, I take it, is not speculative. No, it definitely would have triggered their entitlement to take extra time. I mean, they would have been entitled to take extra time and that's something, you know, that we put into the mix when we didn't file the comments. But, you know, more importantly for us, you know, we looked at the notice to preliminary determination. If 351.309 would have been there in the notice or if the regs 351.309 would have referred to having, if you're filing just comments, you have to file, you have to preserve your rights. Or if section B of 351.309 would have referred to change circumstances, it would have been a different situation. In our case, you look at the notice, you look at the regulations, and you say 351.309 renewal requirement doesn't apply. And renewal requirement is, you know, a unique situation because it's just renewing something that you've already said, you've already done. The best job you could do is filing one piece of paper where you almost know that nobody's going to consider it again. And why do that? The only reason we believe you have to renew is if there's something in the statute or something in the regulation or some binding court decision saying, okay, you have to review. The statute doesn't say it. The statute says, you know, exhaustion is where it's appropriate. If you look at the regulation, the regulation says, yeah, you sure better renew if you're required to file a case with me. Look at your discourse decision in chorus, and they said, you know, that's fairly important. There's a regulatory requirement. You have to file that one piece of paper, even though it may be futile, if you're bound by 351.309. Now, let me see, talking, turning to the particular filings that you made prior to the preliminary action, and that would include your letter, the three-page letter, and the 41-page submission that you made when you had the meeting with, I forget his name. We met with Mr. Taverman, who's a decision maker in 700 Department of Commerce officials, and, you know, we were there. I would say, you know, it's not on the record, but to see our submission, this was a very serious meeting. Well, wait a minute. You say it's not on the record. Isn't the submission you made, the 41-page? Yes, 41-page submission is on the record. What went on in the meeting. Right, right, okay. In the meeting, we discussed every one of those 41 pages. We had a very serious meeting. We gave our best shot, orally, as we possibly could give. It's an important issue for us. We put everything out there, you know, at this time period because we knew this was our shot at getting this thing resolved as quickly as possible. Now, in the course of the letter or the 41 pages, did you address the legal ground employed by, or adopted by, Commerce and Heavy FL? Yes, Your Honor. Their argument that... That was... Where's the point in all that? If you look at the... Precisely. Why don't you avoid talking over this? I'm sorry, Your Honor. I'm sorry. I apologize. You got the question. Yes. The issue there was trustees and bankruptcy. That was the case before Heavy FL. I think the name changed, but that was the case where the Department of Commerce took that position, and we spent a lot of time looking at these decisions in the meeting, and I think in the first page of a memorandum, it said the Department of Commerce, you know, thinks that this is the law, and we brought the Commerce Department's attention to that, and... This is JA113? Is that the... JA113. Okay. And we talk about... It's Paragraph 4, and we said, Department of Practice and Policy are found in the attached determination. The one case which the Department deviated from this practice, excluded rubber, involved a unique and complex fact pattern, which is easily distinguishable, and we said, moreover, the CIT reversed the Department's adverse effective date decision and excluded rubber, and then we gave limitations to all the trustees in bankruptcy cases. In that case, you know, the judge in that case is the same judge in Heavy FL, and that's a continuation. Okay, but I had a more specific question, and I don't think you addressed it. Did you actually specifically address the argument of statutory incapacity on the part of Commerce to grant the relief you are seeking? Your Honor, I could say, because I was at the meeting, the answer is yes, and if you look at the pages, in the 41 pages that we cite, one of those pages is going to have an excerpt from the case where the judge, the CIT, talks about the issue in that case. So you can see that definitely was a very important issue, because we're telling the Commerce Department, look, you know, in a particular case like this, you absolutely have the right to go back to all unliquidated entries, and you've done it in the past, and now you're trying to litigate it differently on the merits, but the court has said, you know, statutorily that you can go back, and these are, you know, issues that are still pending at the CIT. We had a very favorable decision, Heavy FL, the decision that came out after we filed our briefs here, you know, on the merits, and that's, you know, we feel we have an excellent chance on the merits of this case. Judge Polk? I believe it was Judge Musgrave. I'd have to go back, but, you know, we have this good position on the merits, but we have to get over this hump of exhaustion, and we think the exhaustion problem comes up, because we think Judge Stantz, who misinterpreted whether 351.309 applies, and he abused discretion by taking a very, very harsh position, which he almost admits, but when he said, you only have to file, you know, this one-page letter, and we're saying the one-page letter requirement, because it's obviously futile, it's obviously not saying anything new, only applies when it's very, very clear that you're bound by 351.309, and in this case, it's not clear at all, in fact, you're not bound by 351.309, because the notice doesn't refer to it, and when you look at the regulations, it only applies to case briefs, and when you look at the other part of the regulation, changed circumstances is not a provision where you require case briefs, so it's limited, this renewal requirements, as far as, you know, normal exhaustion, you know, we've exhausted, you know, we put it all out there, we said everything we could, what we didn't do is file the one piece of paper, and we say that's not required in this particular case. I'm not sure if I have two minutes left. You have two minutes left, and we'll save it for you. Thank you, Your Honor. Mr. Majerus? Yes, Your Honor. May it please the Court, this appeal presents a simple issue. Did the trial court use its discretion in requiring exhaustion and finding that it's owed to fail to exhaust when Congress issued a preliminary determination, invited the parties to comment, and it's owed to file no comments? Now, the exhaustion requirement here is statutory. It's under 28 U.S.C. section 2637, and this court, excuse me, this court has held that that's a strict requirement. Well, now, there are certainly exhaustion, statutory exhaustion requirements that are congressionally mandated, strict, you must exhaust in all cases, no ifs, ands, and buts, with a couple of exceptions right around the edges. But this statute says exhaustion is required if appropriate. I mean, that sounds like Congress is basically saying exhaust if, in the course of deciding these cases, it looks like the kind of situation in which exhaustion ought to be required, which isn't mandating anything, as far as I can see. It's not mandating exhaustion, but it's giving the, Congress gave the court the authority to decide if it was appropriate, and this is a perfect example of where exhaustion was appropriate because of what happened. The context of that... Well, I can think of a better example of a case where exhaustion would be appropriate. This one, actually, I find quite difficult, but, I mean, I know you, this is your position that it's a perfect example, but it doesn't look like a perfect example. Well, under this court's precedent, I, the situation is very analogous to recent cases in this court, in particular, Cora Stahl. So in this situation, we had, it was a changed circumstances review. That was requested about a year and a half after the initial anti-dumping review. Mid-continent, filed court seeking a partial revocation as to four types of routine nails. Can I just, can I just focus? Sure. I mean, I keep fastening, I guess, on the aspect that I asked your opposing counsel about. It was commerce's position in this case that you were legally required to do what you did here. That this wasn't the matter of discretion, of policy balancing, and this was the position that you had argued in the trustees of North American Bankruptcy and in Heva Phil. Cora's was not that. Cora's was a case in which exhaustion actually might well have served a purpose because the issue was one that was concededly by commerce within its discretion. And so maybe if you had been presented additional facts or better policy arguments, you might have changed your mind. But when the issue is one on which commerce's position is, our hands are tied by the statute. There is nothing you can tell us that is going to allow us to do what you think makes sense, even if we thought it made sense. But that's not the case here. The court in the Heva Phil matter noted that commerce does have the discretion to decide. But disagreeing with your position. Well, that wasn't commerce's position. I'm sorry. It wasn't commerce's position that it had the discretion. It is their position that they have the discretion. It's based on policy decisions on what appropriate effective date to choose. And that's exactly what the court in Heva Phil noted. In that case, the whole issue was whether Congress's hands were tied in terms of selecting an effective date. And the court recognized that's not the case. So you're saying that it is not commerce's position that they are legally compelled to In this circumstance, it's an issue of commerce's practice. But aside from the merits of the effective date issue, we can't even get there because the Tochu failed to exonerate the circumstance. No, no, no. Whatever commerce's position may be now after the 2012 decision in Heva Phil, in 2011, in March and April of 2011, when the events relevant here, it was, was it not, commerce's position that, and I'm going to quote from, from Heva Phil, commerce previously claimed that 1675A, I guess that's the administrative review, precludes the inclusion of unliquidated entry subject to a completed administrative review within the scope of a changed circumstances review. That the statute actually said, you may not do this. Your Honor, that I think that's, and it cites and Was that, is that not what commerce's, is the court wrong in saying that was commerce's position at that time? Your Honor, that the Heva Phil case dealt with different factual circumstances. And the problem here is really fundamentally that what the CIT is reviewing is commerce's determination at the administrative level. They weren't even able to make that determination. And bearing in mind that the final determination is what the CIT is reviewing, not the preliminary determination. Well, they reiterated the position in the preliminary determination in the final determination. They noted it in a footnote. And I think it's very, it's important to keep in mind that in the preliminary determination, they simply documented in the background discussion at the very beginning of the preliminary determination that Itocho had taken a position as to the effective date and that a meeting took place. We don't have a transcript. We don't know what necessarily took place in that meeting. But the fundamental problem is that after the preliminary determination was issued, how does commerce know that they're preserving their argument? Maybe they decided it wasn't worth litigating any further. They had no indication whatsoever that Itocho was maintaining this position. And because of that, commerce stayed with its position in the preliminary determination and noted it in a footnote. And the footnote in the record, it's on page 104, I believe, simply noted that this is what we had raised in our preliminary determination and this is our position. But without having the argument from the parties, they had no basis to change their position. The court has routinely held both in Middlesteel and in Coruscant that commerce can be persuaded. And this was certainly a circumstance where they could have been persuaded to go the other way. But without having that argument, they have no basis. Which would have required them, I take it, to take a position contrary to the one they were litigating then. Well, that case dealt with different factual circumstances. It wasn't addressing this product in particular and didn't involve the same administrative review. What important factual distinctions were there between that case and this one that could have led commerce, consistent with the position of litigating an EBA bill, to reach a different result in this case? Your Honor, because the product of that issue and the review and everything that was involved was different. Why does that matter? Because in this instance, those determinations are important. And part of this, I think, dips into the pure legal question and exception of whether that would be- That's what we're focusing on. Right. This case is more similar to consolidated variance, which is the decision of this court, from opinions such as Agro-Dutch. And the distinction is, Agro-Dutch is a case relied upon by counsel. And the federal circuit in that court held that the CIT did not abuse discretion in finding that this exception was applicable. That case dealt with a very narrow issue. And the court recognized it was a simple issue of statutory interpretation. The only issue there was whether an importer was affiliated with a foreign company subject to the duties. And therefore, that was it. That was the ballgame in Agro-Dutch. In consolidating variance, by contrast, the court stressed that we're looking at the practice of commerce. And the practice of commerce here was the issue of the effective date. And the CIT has held that the effective date issue is discretionary. They held that in Okia and also in Parksdale. So that's the distinction. There was simply an issue of statutory interpretation in Agro-Dutch. But in consolidated variance, it went beyond that. It went to commerce's practice. And the court in consolidated variance held that the CIT abused its discretion in applying the exception. For that reason, we believe that the pure legal question exception does not apply. Moreover, the court has also rejected the use of the pure legal question exception when it refers to a second-step Chevron issue. That was recognized by the Court of International Trade in Fouay. This is clearly a second-step Chevron determination. It is not a simple statutory interpretation issue. This is a decision by commerce about what effective date is appropriate. And without having that argument, their commerce had no basis for fleshing out and discussing that to a fuller extent. It was not even in its final determination. They simply didn't have any arguments from the parties. And so because of that, Forrestall seems shockingly similar to this case. In that case, you had an issue of where commerce had made a preliminary determination that commerce had absorbed anti-dumping duties rather than passing it on to its customers. That was the preliminary determination in Forrest. Commerce provided comment. Forrest did not file anything. And therefore, commerce adopted its preliminary, essentially the same position in its final determination. And this court held that the trial court did not abuse its discretion in requiring exhaustion and finding that Forrest failed to exhaust because they didn't put commerce on notice, did not give commerce any indication that they maintained their argument, that they abandoned their argument. And without that, commerce didn't have a basis to articulate its position in the final papers beyond the preliminary. Commerce articulated its position in the preliminary of a couple of paragraphs, which in my experience is consistent with the way commerce typically deals with issues that commerce has previously dealt with in other reviews and simply says, this is our position. It's still our position. And we're sticking to it. Suppose that a one-line letter had been sent to commerce, as the trial judge suggested, in response to the preliminary. Do you suppose that commerce would have, in its final determination, written a much longer exegesis on this issue? Is it realistic to suppose that? I think that would be speculating in terms of what commerce would do. They may not have provided more analysis. But not having that position is precisely the problem. And this court noted that in Middle Steel, which is also a similar case. The court very clearly stated they have to provide some kind of indication that they maintain their prior position. To what end, though? That's the question. I mean, if we were talking about a statutory mandate, then the answer would be yes. If we were talking, for example, about maintaining a position in a court of appeals with respect to an issue that the court has already, a previous panel of the court has decided, all you have to do is put in a footnote and you expect the court to reject it. But you have to put in the footnote. But the question here, with respect to exhaustion, which the Supreme Court has repeatedly said is a matter of weighing and balancing, the question is, what is the realistic expectation that some benefit would flow from the one-sentence letter? And I'm struggling to see that there would be any benefit under all the circumstances of this case. Other than, you know, giving commerce an opportunity to perhaps decide to write something. But how likely is that, I guess, as a practical matter? Well, I think it's important to keep in mind as well the framework in terms of timing here. So the applicable statutes and regulations state that if no party files comments, then 45 days, commerce will make a determination. If a party files a comment, it could take up to 270 days. Now, there are a variety of different kinds of changed circumstances reviews. They can be as complex as your typical administrative review involving margin calculations, and that explains why there is such a period of time that's given. Council makes a big issue about, well, we didn't file something because commerce would have taken 270 days. That's the second. This is, I guess, in the realm of, I guess, the same realm that Mr. Marshak talked about. He said in his experience, commerce does, in fact, get a comment that triggers a right to add nine months or whatever it is, and typically, yeah, they do it. Do you have any representations on that score? I mean, in general, nobody does anything before they have to. That's a good default rule. I think it depends on the circumstances of the case, and the reason I point that out is by having a party file something, it gives commerce—commerce has additional time to consider the issue. But again, it's an issue of we're really speculating what— Well, we're speculating about how much time there was. But what's not speculative, it seems to me, is that there would be at least the risk that a significant additional period of time would be consumed had there been a result. So the whole point is normally in exhaustion situations, there's no cost to exhaustion. You go ahead, send in the letter, you're done, you've taken care of the exhaustion problem, you've taken an issue off the table. Here, however, unusual but nonetheless present is that there is something on the other side of the table. How big the something would be, we don't know. But we do know that there is a risk of a significant additional period of time, which is prejudicial to them. But it's prejudicial to commerce to not have the comments from the parties. Counsel knew the position of commerce on this issue. They could have tried to persuade them the other way, and that's exactly what the court emphasized in Forrestall Middle Steel. Without having that argument, though, commerce doesn't have a basis or doesn't have reason, really, to more thoroughly expound its position. And that's why the additional time is there, so they can consider those issues. I see I'm running out of time. I just wanted to briefly touch upon counsel's discussion of the regulation 351.309. Counsel is misreading this provision. Under subsection B, it says that commerce may request written argument on any issue from any person at any time. Very open-ended, not restricted to a changed circumstances review. And then it doesn't state that commerce must request a case brief if this regulation is applicable. It says under subsection C.1 that any party may submit a case brief. So commerce sought comments, and counsel could have submitted a case brief. And subsection C.2 states that you must present arguments even if you raise them before the preliminary determination. You've got to raise them again, and that's not what happened here. So for all of these reasons, we would ask that this court affirm the Court of International Trade's decision and find that the CIT did not abuse its discretion in requiring this option. Thank you, Mr. Manager. Mr. Mosvick has little time for rebuttal. Thank you, Your Honor. A couple of points. First, on page 144 of the joint appendix, you have the trustees and bankruptcy decision, and where it has commerce's position, and I'll quote from the case. Commerce claims that 19 U.S.C. 675A unambiguously precludes the inclusion of unliquidated entries subject to a completed administrative review when the scope for changed circumstances review. That was commerce's position at that time. The court recognized it. We discussed that. That was in the documents that we submitted to the commerce department. That was discussed in commerce, so it would be absolutely futile for us to file additional comments, and also it's a pure question of law. Pure question of law is what commerce thinks what the law is. We may say commerce has discretion, and the court in Hagerfield said that commerce abused its discretion. Commerce's position at that time was this is the law. Commerce thinks that's the law. It is a pure question of law, and there's really nothing we could have said or done that could have changed commerce's mind on that. Talking about our 351.309 and the notice and the requirement there, if you have a normal notice that commerce gives after administrative review, it says interested parties may submit case briefs and or written comments. In our notice it says interested parties are invited to comment, so not a case brief. There's a real distinction between a normal notice that talks about case briefs and our notice that didn't say anything about case briefs. Also, you look at chorus, and I think that's important. The chorus decision by this court, two very important points. The first point is the court expressly referred to the fact that the requirement of renewing is a requirement explicitly imposed by the agency as a precondition to judicial review, and that renewal requirement is the regulation. And then they said commerce provided nothing by way of affirmative justification for its failure to raise the duty absorption issue, nor has commerce suggested why it's burdensome. In our case, we provided reasons why we did not file that short summary renewal letter. That would have been ignored by commerce, and which was futile in chorus. They just claimed they didn't have to do it. We're saying we've given a lot of reasons. It would have taken more time. 359.309 was not cited in the notice, and it's a pure question of law. Thank you, Your Honor. Thank you very much. I apologize, Your Honor, for talking to you. I didn't cite it. We'll take the case on revisal. All rise.